IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AUTONOMY, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-505 (AJT/TCB) |
| | ) | |
| TASC, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant TASC, Inc. ("TASC") and Plaintiffs Autonomy, Inc. ("Autonomy") and

Hewlett-Packard Financial Services Company ("HPFS") have filed cross-motions for summary

judgment [Doc. Nos. 51 and 60] (each party's "Motion" and collectively the "Motions"). This

Court held a hearing on November 13, 2015, following which the Court took the Motions under

advisement. [Doc. No. 76]. Upon consideration of the Motions, the memoranda of law in

support thereof and in opposition thereto, and the arguments of counsel at the November 13,

2015 hearing, Plaintiffs Autonomy and HPFS' Motion is DENIED and TASC's Motion is

GRANTED.

### I. BACKGROUND

Unless otherwise indicated, the following facts are undisputed:

This case arises out of a dispute between a software company and a prime government

contractor over the purchase of Autonomy Situational Awareness Software (the "Software").

During the relevant time period, TASC was the Prime Contractor under the ASPIRE Contract

No. NRO0000-10-C-0163 (the "Prime Contract") with the National Reconnaissance Office (the

"NRO" or the "federal government"), under which the "ASPIRE team," which included TASC,

was to provide support to the NRO in connection with a number of military intelligence programs, including the Automated Wide Area Surveillance Platform ("AWASP") Program. According to the unclassified Task Description for the AWASP Program, the ASPIRE team was charged with "procurement of [commercial off the shelf] Hardware, Software and Services . . . as required, to satisfy AWASP requirements." [Doc. No. 56, Ex. 6]. The Prime Contract also contained a "Limitation of Funds" clause, as required under federal procurement regulations, conditioning the NRO's payment obligations on the availability of sufficient appropriated funds. *See* 48 C.F.R. § 52.232-22; [Doc. No. 56, Ex. 7].

On January 31, 2012, after a period of negotiations, TASC and Autonomy signed Autonomy Purchase Quotation No. 012012 (the "Contract") [Doc. No. 1, Ex. A]. HPFS, as financial underwriter for the transaction, signed a separate purchase agreement with Autonomy entitling it, as assignee, to Autonomy's rights under the Contract.[1]

Under the terms of the Contract, TASC agreed to purchase (1) a software license for 25 ASA systems with 10 feed system configurations; (2) annual maintenance for those 25 systems; and (3) annual maintenance for 15 separate ASA systems licensed under a prior agreement for a total price of $5,211,562.00. In the Contract, above its signature, TASC "certifies that it is authorized to act as agent for the United States Government for the [AWASP] Program pursuant to [the Prime Contract]." The Contract incorporates, *inter alia*, an Attachment B, titled Extended Payment Plan ("EPP") and the Autonomy End User Software License and Support Services Agreement (the "EULA"). *See id.* at 2-8. The Contract also states, in pertinent part:

> This [Contract] constitutes a binding commitment to purchase the products and services set forth above, and shall be governed by . . . the [EULA] .. . .

---

[1] Autonomy and HPFS are each a corporate subsidiary of the Hewlett-Packard Company.

> Notwithstanding anything to the contrary in the [EULA], invoices hereunder shall be payable in accordance with the terms of the Extended Payment Plan . . . .

The EPP scheduled the payment obligations as between Autonomy and the "Government." The "Government" is defined as "TASC, Inc. as agent for the Automated Wide Area Surveillance Platform (AWASP) Program." Under the EPP, the total Contract cost of $5,211,562.00 was to be paid under an 18-month payment plan beginning on January 31, 2012, and structured around a "Base Period" of nine months and an "Option Period" of nine months. TASC was to provide payment to Autonomy in three installments: (1) $260,578.00 due January 31, 2012 for the Base Period; (2) $2,475,492.00 due November 1, 2012 for the first payment for the Option Period; and (3) $2,475,492.00 due July 1, 2013 for the second payment for the Option Period. At the conclusion of the Option Period —after TASC had fulfilled its entire payment obligation—"a perpetual license in the Software [would] fully vest with the Government . . ." *Id.* at 3. However, if TASC failed to renew the Contract for the Option Period, it would be assessed a Termination Charge equal to the discounted value of the balance of the payments due, subject, however, to what the parties referred to as the "Out Provision," set forth in Section 4 of the EPP:

> If Option Period 1 of this Extended Payment Plan is not exercised **for reasons other than 1) lack of appropriated funds (for the Software) or 2) nonrenewal of the AWASP Program**, or if the Government terminates the [Contract] due to a Termination for Convenience, the Government shall pay Contractor a termination charge in an amount equal to the present value (discounted at three percent (3%) per annum, compounded monthly) of the remaining EPP Payments through the end of the full EPP Term (base period and all option periods).

*Id.* (emphasis added). Consistent with the Out Provision, Section 1 of the EPP, titled "Statement of Intent," states, *inter alia*, that "[i]t is the intent of the Government . . . to exercise each renewal option and to extend the [EPP] . . . so long as the AWASP Program receives appropriations for each period in an amount equal to in [sic] or in excess of the payments owing for such year."

3

In April 2012, TASC wired to HPFS, as Autonomy's assignee, the $260,578.00 Base Period payment. Plaintiffs did not receive, however, the first Option Period payment due on November 1, 2012. On January 23, 2013, Autonomy contacted TASC about the November 1, 2012 Option Period payment and in that communication, included an invoice for the Termination Charge in the amount of $4,914,174.41 [Doc. No. 52, Ex. 28]. Approximately one month later, on February 27, 2013, TASC notified Autonomy that it was declining to exercise the Option Period because the necessary funds for the Software had not been appropriated. [Doc. No. 52, Ex. 29].[2] On April 17, 2015, over two years later, Plaintiffs filed this suit alleging breach of contract and breach of warranty against TASC. Following the close of discovery, Autonomy and TASC each moved for summary judgment.[3] This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[2] TASC's e-mail stated:

> Per the Terms and Conditions of the [Contract] and associated EPP, TASC, Inc. acting on behalf of and as the government agent for the AWASP program formally informs Autonomy of the non-renewal of the subject EPP. The reason for the non-renewal is due to the fact that lack of appropriated funds for the AWASP Software [sic], thus eliminating the need to continue the EPP. Consistent with the terms of the agreement, TASC, Inc. shall cease all use of any Software licenses and/or Software upgrades that may have been issued under the terms and conditions of the EPP.

It appears that neither TASC nor the federal government actually used any of the specific software referenced in the Contract. *See* [Doc. No. 66 at 25-28].

[3] On July 28, 2015, TASC filed motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(c). [Doc Nos. 30, 33], both of which the Court denied on August 21, 2015. [Doc. No. 46].

judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir.2007). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248. Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

Plaintiffs' Complaint alleges two causes of action: breach of contract (Count I) and breach of warranty (Count II). [Doc. No. 1 at 7-11]. Plaintiffs' core allegation as to both counts is that Defendant TASC misrepresented its authority to bind the federal government as its agent and that Autonomy would not have entered into the Contract but for TASC's false representation. More specifically, Plaintiffs claim that TASC breached the Contract when the Option Period payment was not made because the federal government had made, through TASC, "a binding commitment to purchase" the ASA Software, when, in fact, the federal government

5

"**never** agreed to purchase the 25 ASA [S]oftware systems or maintenance . . ." [Doc. No. 52 at 21] (emphasis in original).  TASC disputes these claims.  It first contends that it never misrepresented its authority or scope of agency.  It also contends that the capacity in which it signed the Contract, and its representations concerning that capacity, is immaterial because the Option Period payment was excused under the Contract's Out Provision since TASC did not exercise the Option Period pursuant to Section 4 of the EPP due to a lack of appropriated funds.

### A.    *Breach of Contract*

Under Virginia law, the elements of a breach of contract claim are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's breach of that obligation; and (3) damages.  *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443 (E.D. Va. 2009) (citing *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (Va. 2004)).  In order to prove the third element, a plaintiff must also prove that the defendant's breach "actually and proximately caused the claimed damages." *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 630 S.E.2d 304, 311 (Va. 2006).  Those damages must be proven within a reasonable degree of certainty; speculative damages are not recoverable because they are uncertain. *Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076, 1086 (citing *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 671 S.E.2d 132, 135 (Va. 2009).  The burden of proving proximate cause is on the party claiming breach. *Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.*, 247 Va. 187, 190, 440 S.E.2d 606, 608 (Va. 1994).  Here, there is no dispute that the parties entered into a valid contract, regardless of the capacity in which it was negotiated and signed by TASC.  The parties fundamentally dispute, however, whether there was a breach and if so, whether there are any damages.

As best the Court can determine, Plaintiffs' theory is that TASC misrepresented that the federal government had agreed to purchase the Software in advance of actually obtaining appropriated funds, as evidenced by including the Software as a contract line item in the Prime Contract, when in fact it had never committed to the purchase of the Software.[4] This misrepresentation, alleges Autonomy, fraudulently induced it to enter into the Contract and therefore constituted a breach.  Autonomy further argues that because the Contract was fraudulently induced from the outset, TASC cannot rely on the Out Provision to avoid liability.[5] None of these contentions has any merit.

First, as a matter of law, TASC's alleged misrepresentation of its agency, even if true, did not constitute a breach the Contract. The Contract was breached, if at all, when the Software was

---

[4] *See* Transcript of Oral Argument at August 21, 2015 Hearing on Defendant's Motion to Dismiss [Doc. No. 47] at 27.

> THE COURT:  So your theory of the case is that you didn't receive your money not because the government was not able to obtain appropriation of funds for something they had committed to buy, but they never agreed to buy it in the first place; therefore, there was no reason to seek the appropriated funds?

> Plaintiffs' Counsel: That is exactly correct, Your Honor.  The whole basis of our assent to this transaction in the first place, our agreement to even enter into this deal was TASC['s] warranty certification that they were acting as an agent of the U.S. government and on behalf of the U.S. government under their prime contract and under the top secret AWASP program.

> THE COURT: And that the government had, in fact, purchased—

> Plaintiffs' Counsel: The principal had purchased.  The agent is telling us that the principal had committed to this purchase. They had put these 25 licenses on the contract.

[5] In its Reply in Support of Motion for Summary Judgment, Plaintiffs state that "[r]eading the contract as a whole, the no cost termination "out" for the contract's option period is based on all other terms and conditions of the contract being true/truly represented/performed/not breached." [Doc. No. 57 at 2].

not purchased, i.e. when TASC declined to exercise the Option Period. But Plaintiffs have failed

to adduce facts sufficient to establish any breach on the part of TASC or the federal government

when TASC did not exercise the Option Period or make the Option Period payments. There are

no facts sufficient to establish that either TASC or the federal government lacked the stated

intent to purchase the Software had the necessary appropriated funds been obtained. At the

November 13, 2015 hearing on the Motions, Plaintiffs confirmed that they do not contend that

TASC's reason for declining to exercise the Option Period was not within the scope of the "Out

Provision," viz. the lack of appropriated funds, or that TASC's justification for not so doing was

a pretext for some other reason not within the scope of the Out Provision, or that TASC acted in

bad faith in not exercising the Option Period. More dispositive is that Plaintiffs also conceded

that if the necessary funds had not been appropriated, the federal government, on whose behalf it

claims TASC was acting, would have no liability. An agent, even one who acts without the

authority of his purported principal, can have no greater liability under an unauthorized contract

than his principal would have had. *See generally* 1A *Miche's Jurisprudence of Virginia and

West Virginia*, Agency § 78-79 (Paul Ernest et al. eds., 2011) ("An agent will not be liable where

he makes an unauthorized contract for an assumed principal, unless the contract is one that could

have been enforced against the principal if authorized."); *see also* Restatement (Third) of Agency

§ 6.10 (2006). Here, the federal government had no liability unless the necessary funds had been

appropriated; and TASC's personal liability would be no greater than that of the federal

government on whose behalf it supposedly acted.

　　　Plaintiffs argue that TASC's fraud somehow eliminated or vitiated the Out Provision in

the Contract and for that reason TASC became unconditionally liable for the payments under the

EPP, even though there were no funds appropriated. This theory has no basis in law or fact.

Under Virginia law, which governs the Contract, a victim of a fraudulent contract has a choice: it may either rescind the contract and return any benefits it has received, or it may affirm the contract and sue for damages under the terms of the contract. *See, e.g., Devine v. Buki*, 767 S.E.2d 459, 466 (Va. 2015). Here, Plaintiffs understandably have not rescinded the Contract and returned the $260,000 Base Period payment they received under the Contract. Rather, Plaintiffs have chosen to affirm the Contract and seek damages. But Plaintiffs' theory of breach and damages is not based on the Contract, as written. Rather it is based on a construction that eliminates from the Contract those specific provisions that defeat their recovery. *See* n. 4, *supra*. The Court knows of no basis for such legal legerdemain.

Moreover, even if TASC's misrepresentations concerning its authority to bind the government to the Contract could constitute a breach, the record is insufficient to establish that the government's supposed lack of the required contractual commitment—which Autonomy believed it had obtained through TASC—had any causal relationship to its inability to obtain the necessary appropriated funds for the Software that the federal government had authorized TASC to procure for the AWASP Program. Rather, the limited record in this regard suggests that TASC in fact made efforts to obtain appropriated funds, and those efforts were ultimately unsuccessful. *See* [Doc. 61 at 12].

"Availability of Funds" clauses are standard in government contracts; and the Option Period was, by the plain terms of the EPP, contingent upon such availability of funds. The "binding commitment" to purchase was a commitment to purchase *under the terms of the Contract* and was therefore subject to the Out Provision. Were there any ambiguity in the Contract on this point, the record is clear that those who negotiated the Contract understood that if the necessary funds were not appropriated, there would be no obligation to purchase the

9

Software. *See* [Doc. No. 56 at 10].[6] It is also undisputed that TASC exercised its right to not exercise the Option Period precisely because "funding was not made available for purchase of the [ASA] Software." [Doc. No. 61 at 12].[7]

For the above reasons, the Court concludes that there are no material facts in dispute and that TASC is entitled to judgment as a matter of law on the Breach of Contract claim.

## B. *Breach of Warranty*

Plaintiffs' Breach of Warranty claim (Count II) essentially alleges that Plaintiffs were fraudulently induced into entering the Contract because TASC misrepresented the scope of its

---

[6] Plaintiffs' claims are particularly troubling in light of the record on this point. In that regard, the record establishes, without any contrary evidence, that TASC communicated to Plaintiffs throughout contract negotiations that the funds necessary to exercise the Option Period might never be appropriated. [Doc. No. 66 at 11]. Everyone involved in the transaction, including Autonomy's own employees who had negotiated the contract, was aware of this possibility. In fact, Autonomy's former Senior Director of Federal Sales and its former Vice President of Federal Sales testified at deposition that they understood that if the funds were not appropriated, TASC had no obligation to exercise the Option Period and pay the remaining purchase price beyond the $260,000 Base Period payment. *See* [Doc. No. 61, Ex. 22] (Deposition of Daniel Gordon Truitt); [*id.* Ex. 16] (Deposition of Michael Patrick Brunnick). Autonomy's former Senior Director of Federal Sales further allowed that he did not understand how Autonomy had any tenable claim against TASC for breach of contract or why the lawsuit had been brought in the first place, except at the insistence of HPFS. [Doc. No. 66, Ex. 22]. Likewise, in an e-mail exchange, Autonomy's in-house legal counsel opined to HPFS's in-house counsel that there was no claim for breach. [Doc. No. 61, Ex. 44 at 2].

[7] To the extent that Autonomy understood that TASC's agency authorized it to commit the federal government to purchase the Software in advance of obtaining appropriated funds, there is a strong argument that such an understanding concerning the scope of TASC's agency was unreasonable as a matter of law. *See Leiter v. United States*, 271 U.S. 204, 207 (1926); 48 C.F.R. § 52.232-18 ("[t]he Government's obligation under [a] contract is contingent upon the availability of appropriated funds from which payment for contract purposes can be made."); 31 U.S.C. § 1341(a)(1)(A)-(B) (the Federal Antideficiency Act) ("An officer or employee of the United States Government . . . may not make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation [or] involve [the] Government in a contract or obligation for the payment of money before an appropriation is made . . . .").

agency and authority to purchase the Software on behalf of the federal government. This claim fails for several reasons.

First, as discussed above, the record is insufficient, as a matter of law, to establish that TASC misrepresented the scope of its agency. It is undisputed that as Prime Contractor under the ASPIRE Contract, TASC was contractually authorized to procure the ASA Software for the AWASP Program. Pursuant to that authorization, it entered into the Contract with Autonomy for the purpose of procuring the Software, subject to an appropriation of funds. Autonomy's "understanding" that the federal government had agreed to list the specific Software in the Prime Contract as a contract line item requirement is simply not supported by any representation that TASC made in connection with the Contract.

Second, there is no evidence sufficient to establish that TASC intended to mislead, or in fact misled, Plaintiffs. As stated above, there is no evidence sufficient to establish that TASC misrepresented either its stated intent, or the intent of the federal government, to purchase the Software if the necessary funds were appropriated. Also as discussed above, the record establishes that during negotiations, TASC communicated to Plaintiffs, and Plaintiffs understood, that there needed to be appropriated funds before the Option Period would be exercised. *See supra* at 9; *id.* n. 6.[8]

Finally, the Court concludes as a matter of law that in any event there are no damages caused by any alleged misrepresentations of agency, since, as discussed previously, had the representations been as Plaintiffs claim they understood them to be, the commitment Plaintiffs believed they had from the federal government was subject to obtaining the required appropriated funds. Nor are there any facts sufficient to establish that the federal government

---

[8] As to the element of reasonable reliance, *see* n. 7, *supra*.

would have been able to obtain the required funding had it committed to the Contract in the way that Plaintiffs allegedly believed that it had.  For these reasons, Plaintiffs' Breach of Warranty claim must also fail, and TASC is entitled to summary judgement on that claim.

### IV. CONCLUSION

For the reasons stated above, the Court finds and concludes that there are no genuine issues of material fact and that TAASC is entitled to judgment as a matter of law as to each of Plaintiffs' claims.  Accordingly, Plaintiffs Autonomy, Inc. and Hewlett-Packard Financial Services Company's Motion for Summary Judgment [Doc. No. 51] is DENIED.  Defendant TASC, Inc.'s Motion for Summary Judgment [Doc. No. 60] is GRANTED and the case is DISMISSED.

November 19, 2015
Alexandria, Virginia

_____ /s/
Anthony J. Trenga
United States District Judge